KENNETH G. and BETTYE W. HAMM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamm v. Commissioner
Docket No. 9049-78.
United States Tax Court
T.C. Memo 1980-154; 1980 Tax Ct. Memo LEXIS 424; 40 T.C.M. (CCH) 284; T.C.M. (RIA) 80154; May 5, 1980, Filed Ford T. Bussart, for the petitioners. Benjamin A. De Luna, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies of $9,382.75, $5,140.50, and $788.73 in petitioners' Federal income taxes for 1973, 1974, and 1975, respectively. The only issue for decision is whether income earned by petitioner Kenneth G. Hamm is reportable as partnership income or as personal income. All of the facts have been stipulated. Petitioners Kenneth G. Hamm (petitioner) and Bettye W. Hamm, husband and wife, resided in Rock Springs, Syoming, when they filed their petition. They filed joint Federal income tax returns for 1973, 1974, and 1975 with the Internal Revenue Service Center, Ogden, Utah. Petitioner was engaged in the practice of law in Rock Springs, Wyoming, *425 for a number of years prior to July 1, 1973. On February 1, 1952, petitioner joined the partnership of Galicich and Magagna as a partner in the practice of law. The partnership became known as Magagna, Galicich, and Hamm. Both before and after petitioner joined the firm, the partnership reported its income taxes on a fiscal year ending January 31. In the course of his practice with the partnership, Mr. Magagna served as attorney for the City of Rock Springs and counsel for the Union Pacific Railroad (the railroad). In 1952, petitioner was appointed trust officer of the Rock Springs National Bank (the bank). In 1958, he was appointed City Police Judge. The income received from these positions from 1952 through 1960 was reported as partnership income and distributed to the partners in the ratio specified in their oral partnership agreement. Mr. Magagna withdrew from the partnership on February 1, 1960. Thereafter, petitioner and Mr. Galicich continued the partnership with each retaining a 50-percent interest. Petitioner continued to serve as City Police Judge, trust officer for the bank, and counsel for the railroad. Mr. Galicich also was retained as counsel for the railroad. *426 All proceeds from these positions were reported as partnership income and distributed equally to the partners until January 1, 1973. On January 1, 1973, Mr. Galicich retired. He agreed, however, to continue the partnership for a winding-down period in order to complete the collection of fees earned prior to his retirement. Petitioner and Mr. Galicich further agredd that, while each would receive 50 percent of the uncollected receivables, all fees earned by each of them subsequent to January 1, 1973, would belong to the earning partner and not to the partnership. After January 1, 1973, a separate account was kept of petitioner's earnings as City Police Judge, trust officer for the bank, and counsel for the railroad. Mr. Galicich received none of these earnings. On July 1, 1973, the Governor of the State of Wyoming appointed petitioner to serve an unexpired term as a district court judge. At that time, petitioner terminated his employment as City Police Judge, trust officer for the bank, and counsel for the railroad. Thereafter he has not engaged in the practice of law in any way except in the performance of his duties as district court judge. During 1973, petitioner received *427 compensation in the amount of $4,614 as City Police Judge, trust officer for the bank, and counsel for the railroad. He also received $13,749.46 in 1973 as a district court judge. Petitioner did not report these receipts as his personal income in 1973 but reported them as partnership income on the partnership return for the fiscal year ended January 31, 1974, and as his income for the calendar year 1974. Petitioner received $27,449.92 in 1974 and $28,849.17 in 1975 as compensation for his services as a district court judge. Petitioner reported this compensation as partnership income on the partnership returns for the 1975 and 1976 fiscal years, respectively. Consequently, petitioner reported his 1974 compensation on his 1975 individual income tax return and his 1975 compensation on his 1976 individual income tax return. Petitioner contends that his salary as a district court judge, as well as all of his compensation in the first 6 months of 1973 as City Police Judge, trust officer for the bank, and counsel for the railroad, was partnership income. We disagree. Compensation for the performance of services on behalf of a service partnership, such as a law partnership, is reportable *428 as partnership incom rather than as personal income of the performing partner. See . Where a partner earns income for services performed outside of the scope of his partnership duties, however, the income is taxed to him even though he assigns it to the partnership and the partnership purportedly distributes it to him. See , affg. per curiam (where a father and son entered into a partnership to own, manage, and rent estate and render accounting services, the father's salary for services performed as an employee of an accounting firm was not partnership income). See also (son's military service earnings were not partnership income). We think it clear that the income received by petitioner beginning July 1, 1973, and continuing through 1975 as a district court judge was his individual income rather than partnership income. The duties performed by petitioner in his capacity as a district court judge were not within the scope *429 of any partnership duties. His judicial appointment was personal to him. He did not serve as a district court judge on behalf of the partnership. The same is true with respect to petitioner's duties as a City Police Judge during the first 6 months of 1973. We conclude, therefore, that petitioner's compensation from those positions was not partnership income but was his individual income. The stipulation of facts with respect to the 6 months prior to July 1, 1973, is ambiguous. The stipulation states that: "On January 1, 1973, Mr. Galicich retired," and "it was agreed that all fees earned by an individual partner after January 1, 1973, belong exclusively to that individual and not to the partnership." After that date, it is further stipulated, "Mr. Galicich shared in only 50 percent of the uncollected receivables at the date of his retirement." The stipulation states also that Mr. Galicich "agreed to continue the partnership of Galicich and Hamm for a winding-down period until it was determined that no further fees earned prior to his retirement were collectible." The stipulation thus indicates that after January 1, 1973, petitioner and Mr. Galicich continued their partnership *430 only for the purpose of collecting already-earned fees. After that date, Mr. Galicich retired and did not earn or share any new income but received only his share of the collections of the receivables earned prior to his retirement. Petitioner, on the other hand, continued to practice law and to earn fees. Thus, petitioner and Mr. Galicich after January 1, 1973, were no longer partners for the practice of law and the earning of income. It follows that none of the income earned after January 1, 1973, was partnership income but rather was petitioner's individual income. Petitioner apparently interprets the stipulation language to mean that the Galicich and Hamm partnership continued for the practice of law and that the income earned after January 1, 1973, was "distributed" by the partnership to its members in proportion to their earnings. That is not, however, what the stipulation states. It states that Galicich and petitioner orally agreed that all fees earned by an individual partner after January 1, 1973, "belong exclusively to that individual partner after January 1, nership [emphasis added]." Because the earnings did not belong to the partnership, they could not be distributed *431 by it. We conclude, therefore, that after January 1, 197o, when Mr. Galicich retired, all of petitioner's earnings from his services as bank trust officer and counsel for the railroad were his individual income rather than that of any partnership with Mr. Galicich. Supporting this conclusion are additional related facts. The Forms W-2, filed by the employers, i.e., the bank and railroad, showed "K. G. Hamm" rather than a partnership as the recipient of the compensation. This treatment indicates that the railroad and the bank regarded the services as having been performed by petitioner as an individual employee rather than on behalf of a partnership. Further, it is stiuplated that: "After January 1, 1973, the partnership kept a separate accounting of the W-2 income earned by petitioner in his personal capacity [emphasis added]." These facts tend to confirm that the compensation from the railroad and the bank was petitioner's individual income rather than that of a partnership. Citing , and , petitioner contends that an individual can transfer income *432 tax liability on his earned income by assigning it to a partnership. Those cases, however, provide no support for petitioner's contention. They treat as partnership income the earnings of a partner serving as a court-appointed receiver on the theory that the partner's services as receiver were undertaken as part of his partnership duties. Petitioner also argues that it is indquitable for respondent to contest the manner in which petitioner reported his income because petitioner has reported his partnership earnings on a fiscal year basis for the past 23 years. Respondent, however, has not challenged petitioner's right to report partnership income on the fiscal year basis. Respondent contends, and we agree, that petitioner's individual earnings may not be reported as if they were partnership income. Petitioner is entitled to continue to report the collections on the receivables existing on January 1, 1973, as partnership income. It may be true, as petitioner emphasizes, that requiring petitioner to report his individual earnings as well as partnership income for the fiscal year ended January 31, 1973, results in a bunching of income in 1973. It should be noted, however, that the *433 income averaging provisions, section 1301 and related sections, were adopted specifically to ameliorate the adverse effects of fluctuating incomes. To reflect the foregoing, Decision will be entered under Rule 155.